# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED SYSTEMS DEVELOPMENT, INC., Plaintiff, | |
| v. | No. 06-484C (Judge Baskir) |
| THE UNITED STATES OF AMERICA, Defendant, | |
| and | |
| KENROB IT SOLUTIONS, INC., Intervenor. | |

## INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Dated: July 6, 2006

J. Scott Hommer, III
William L. Walsh, Jr.
Peter A. Riesen
Keir X. Bancroft
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1685
Protected Telecopier No.: (703) 760-1644

*Counsel for Intervenor*

FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

## TABLE OF CONTENTS

**QUESTION PRESENTED** ........................................ **3**

1. Whether ASD has carried its burden of establishing that the likelihood of success on the merits, the irreparable injury, the balance of harms, and the public interest demand that the Court grant injunctive relief ........................................ 3

**ARGUMENT** ........................................ **3**

I. ASD Has Failed To Prove Likelihood Of Success On The Merits. .. 3

II. ASD Has Failed To Bear Its Burden Of Establishing Irreparable Harm ........................................ 9

III. ASD Has Failed To Bear Its Burden Of Establishing That Its Hardship Outweighs The Hardships Of Both The Government And KENROB. ........................................ 15

IV. ASD Has Failed To Bear Its Burden Of Establishing That It Is In The Public Interest To Grant Injunctive Relief. ........................................ 25

**CONCLUSION** ........................................ **27**





FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

## EXHIBITS

1. Declaration of Mark J. Schuler

## TABLE OF AUTHORITIES

### CASES

*Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054 (Fed. Cir. 2000) .......... 4, 9

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) .......... 5

*CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed.Cir.1983) .......... 2

*Cerberonics, Inc. v. Garrett*, No. 91-0239, 1991 WL 45738 (D.D.C. Mar. 20, 1991) .......... 14

*Chapman Law Firm Co. v. United States*, 67 Fed. Cl. 188 (2005) .......... 7, 8, 19

*CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100, 112 (2006) .......... 25

*Cubic Defense Systems, Inc. v. United States*, 45 Fed. Cl. 450, 456 (1999) .......... 16

*ES-KO v. United States*, 44 Fed. Cl. 429, 435 (1999) .......... 16

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir.1993) .......... 2, 3

*Gentex Corp. v. United States*, 58 Fed. Cl. 634 (2003) .......... 16

*Hospital Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005) .......... 20

*Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993) .......... 10

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, (1983) .......... 5

*OAO Corp. v. United States*, 17 Cl. Ct. 91, 105 (1989) .......... 14

*Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (2000) .......... 10

*PGBA LLC v. United States, Wisconsin Physicians Serv. Insurance Corp.*, 60 Fed. Cl. 196, 220 (2004) .......... 9, 12

*PGBA, LLC v. United States*, 57 Fed. Cl. 655, 659 (2003) .......... 4, 11, 25

*Seattle Sec. Servs. v. United States*, 45 Fed. Cl. 560, 572 (2000) .......... 26



FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

*Sierra Military Health Services, Inc. v. United States*, 58 Fed. Cl. 573, 582 (2003) .......... 14, 26

*Spherix, Inc. v. United States*, 62 Fed. Cl. 497, 505 (2004) .......... passim

*Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed.Cir.1983) .......... 14

## STATUTES

28 U.S.C. § 1491(b)(1) .......... 4

31 U.S.C. § 3553(d)(3)(C)(i) .......... 4, 5

5 U.S.C. § 706(2)(A) .......... 4

## REGULATIONS

4 C.F.R. § 21.8 .......... 10

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED SYSTEMS DEVELOPMENT, INC., Plaintiff, | |
| v. | No. 06-484C (Judge Baskir) |
| THE UNITED STATES OF AMERICA, Defendant, | |
| and | |
| KENROB IT SOLUTIONS, INC., Intervenor. | |

## INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to this Court's order dated June 28, 2006, Intervenor KENROB IT Solutions, Inc. ("KENROB" or "Intervenor") submits the following brief in opposition to Advanced Systems Development, Inc.'s ("ASD's" or "Plaintiff's") motion for preliminary injunction.

Contrary to the arguments raised in ASD's motion, both the law and the facts in this case point to the Court's denial of a preliminary

injunction. It is well established that a grant of injunctive relief is an "'extraordinary remedy.'" *Spherix, Inc. v. United States*, 62 Fed. Cl. 497, 505 (2004)r (citing *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983)). To obtain such extraordinary relief, "the movant carries the burden to establish a right thereto in light of the following factors: 1) that the movant is likely to succeed on the merits at trial; 2) that it will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the movant's favor; and 4) that a preliminary injunction will not be contrary to the public interest." *FMC Corp.*, 3 F.3d at 427 (citations omitted). "No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others." *Id.* However, "[i]f the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial." *Id.* (citations omitted).

It is evident that Plaintiff has failed to make an adequate showing with regard to any of the factors necessary to obtain the "extraordinary remedy" of an injunction in this case. Therefore, it cannot succeed on its motion.

## QUESTION PRESENTED

1. Whether ASD has carried its burden of establishing that the likelihood of success on the merits, the irreparable injury, the balance of harms, and the public interest demand that the Court grant injunctive relief.

## ARGUMENT

### I. ASD Has Failed To Prove Likelihood Of Success On The Merits.

As noted above, both Court of Federal Claims and Federal Circuit precedent is clear that injunctive relief is an "extraordinary remedy." *Spherix, Inc.*, 62 Fed. Cl. at 505 (citing *FMC Corp.*, 3 F.3d at 427). It is essential that plaintiff prove all four of the above elements in order for the Court to grant this extraordinary remedy. ASD has failed to satisfy any of these elements, the first being likelihood of success on the merits.



::ODMA\PCDOCS\MC1DOCS1\209082\2

FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

As established in *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 659 (2003), the provision of the Tucker Act providing the United States Court of Federal Claims jurisdiction to hear bid protests, 28 U.S.C. § 1491(b)(1), also provides the Court jurisdiction over post-award override decisions under the Competition in Contracting Act of 1984 ("CICA"). 31 U.S.C. § 3553(d)(3)(C)(i).

Pursuant to 28 U.S.C. § 1491(b)(4), the Tucker Act provides for the standard of review set forth in the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). Under the APA standard of review, an agency override decision may be overturned only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).

"[T]he arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing a rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). "The four factors that constitute arbitrary and capricious agency action include: 1) 'if the agency has relied on factors which Congress has not intended it to

consider,' 2) 'entirely failed to consider an important aspect of the problem,' 3) 'offered an explanation for its decision that runs counter to the evidence before the agency,' or 4) 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Spherix*, 62 Fed. Cl. at 505 (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Under an arbitrary and capricious review, moreover, a court must adhere to a narrow standard and not 'substitute its judgment for that of the agency.'" *Id.* Further, an agency's decision should be upheld under this standard if "the agency's path may be reasonably discerned." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). It is evident from the record that Washington Headquarters Services ("WHS" or "the Agency") has considered the relevant factors necessary to override a stay of contract performance in this case.

Plaintiff contends that the Agency violated 31 U.S.C. § 3553(d) because it relied on legally irrelevant and factually flawed information and ignored factors relevant to the override determination. Pl.'s Mot. at 21. Plaintiff fails to acknowledge, however, that the Agency

satisfied the requirements of 31 U.S.C. § 3553 by determining that contract performance is in the best interests of the United States. "Congress charted an easy course for an agency override. Failing the ability to show that urgent and compelling circumstances justify the override, the agency head can elect to make the unremarkable determination that contract performance is in the best interests of the United States." *Spherix*, 62 Fed. Cl. at 505.

Among the bases for override that Plaintiff disputes is the effect of delay on implementing the new WHS Information Technology Support ("WITS") contract. Pl.'s Mot. at 22. As a preliminary matter, the Court of Federal Claims in *Spherix* held that "[p]resumptively, performance of government contracts on schedule always serves the best interests of the United States." *Spherix*, 62 Fed. Cl. at 506. However in this case, as in *Spherix*, the Agency's concern with the costs of delay is a relevant factor on which to base the override decision. In *Spherix*, as in this case, the Determinations and Findings ("D&F") issued by the head of the Forest Service "was thorough and informative as to the reasons for overriding the stay." *Id.* Like ASD, the plaintiff in *Spherix* questioned "the significance of any delay that

an injunction might cause during the remaining six-week period before the GAO issues its decision. . . ." *Id.* In light of the fact that a four-month delay would ensue as a result of the stay, and delay the launch of a new reservation system during the Forest Service's busy reservation season, the Court held that the Agency reasonably relied on the relevant factor of delay in deciding to override the stay on contract performance. *Id.* The same rationale is operative in this case. The Agency based its decision to override the stay on the fact that "avoiding an unscheduled loss of service is of paramount importance," and that "[t]he public interest demands that every effort be made to ensure a smooth transition" of the new WITS contract. D&F ¶ 10, Administrative Record ("A.R.") at 2283.

Plaintiff's assertion that budget considerations and administrative costs are not relevant factors is disputed by the decision in *Chapman Law Firm Co. v. United States*, 67 Fed. Cl. 188 (2005). In *Chapman*, the Director of Field Contracting Operations for the U.S. Department of Housing and Urban Development ("HUD") held that a stay of marketing and management services would expose the agency to financial harm as a result of physical damage

to housing assets; vandalism, and damage from the elements that could reduce the value of properties, resulting in potential reduction in value of the mortgage insurance fund, and potential exposure to legal liability. *Id.* at 191. The Court held that the relevant factors in HUD's override determination were "to prevent financial losses and to protect the public safety." *Id.* at 192. The D&F by the Director of the Washington Housing Service is based on similar concerns about presenting financial losses and protecting the public safety. As noted in the D&F, "[t]he current fragmentation of IT support combines high costs with low performance and represents a poor use of federal funds." D&F ¶ 8, A.R. at 2282. Further, it was noted, "[a]s of this writing, WHS is operating four separate email systems and eliminating this type of needless duplication is of *paramount importance* in an era of steadily declining IT budgets." *Id.* ¶ 6, A.R. at 2282 (emphasis added). Finally, the Agency set forth that "[a]voiding an unscheduled loss of service is of paramount importance," and went on to set forth the critical functions supported by the WHS network, including the Office of the Secretary of Defense, critical building operations at the Pentagon (including electricity and air

conditioning), and the Defense Finance and Accounting Service, which the Agency described as the payment office for thousands of contracts. *Id.* ¶ 10, A.R. at 2283. In accordance with *Chapman*, the Agency set forth a well-supported D&F based upon relevant factors in determining to override the stay on performance in this case. Plaintiff's assertions to the contrary are unavailing and fail to support likelihood of success on the merits.

In light of the highly deferential standard involved in the arbitrary and capricious review, *Advanced Data Concepts, Inc.*, 216 F.3d at 1058, Plaintiff has failed to establish that the Agency did not consider relevant factors in making a rational decision to override the stay on contract performance.[1] In conclusion, ASD has failed to prove likelihood of success on the merits.

## II. ASD Has Failed To Bear Its Burden Of Establishing Irreparable Harm.

To obtain an injunction, ASD bears the burden of establishing irreparable harm. *PGBA LLC v. United States, Wisconsin Physicians Serv. Insurance Corp.*, 60 Fed. Cl. 196, 220 (2004). "When

[1] Pursuant to discussions Intervenor's counsel has had with counsel for Defendant and the Agency on the arguments they intend to set forth in their Opposition briefs, Intervenor concurs with the additional arguments it expects Defendant to set forth with regard to likelihood of success on the merits.

assessing irreparable injury, 'the relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction.'" *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (2000) (quoting *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993)). As discussed below, Plaintiff has an adequate remedy before the GAO, where it has elected to continue with the merits of its protest of the award of the WITS contract to KENROB despite asking this Court to review WHS's override of the WITS contract suspension.

The GAO regulations make available to a protester an array of remedies, including recommendations that an agency: "(1) Refrain from exercising options under the contract;" "(2) Terminate the contract;" "(3) Recompete the contract;" "(4) Issue a new solicitation;" "(5) Award a contract consistent with statute and regulation;" or "(6) [Make such] other recommendation(s) as GAO determines necessary to promote compliance." 4 C.F.R. § 21.8.,

Further, the GAO regulations require that the remedy afforded a protester take into account any best-interest overrides of a CICA stay. Pursuant to 4 C.F.R. § 21.8(c), "[i]f the head of the procuring activity

determines that performance of the contract notwithstanding a pending protest is in the government's best interest [pursuant to 31 U.S.C. § 3553 (d)(3)(C)(i)], GAO shall make its recommendation(s) under paragraph (a) of this section without regard to any cost or disruption from terminating, recompeting, or reawarding the contract." Such is the remedy available to Plaintiff at the GAO. There is no basis, therefore, for Plaintiff to assert that it lacks an adequate remedy in the absence of an injunction.

Despite the existence of a remedy at the GAO, ASD alleges that "allowing contract performance to continue in light of WHS's . . . decision will cause ASD irreparable harm and lessen . . . ASD's chance of full relief at GAO." Pl.'s Mot. at 30. The irreparable harm that Plaintiff purports it will suffer is "'a competitive disadvantage that might not be remedied, causing a contractor to lose an important business opportunity.'" Pl.'s Mot. at 30 (quoting *PGBA*, 57 Fed. Cl. at 664).

There is no support for Plaintiff's assertion that allowing contract performance to continue would reduce its chance of full relief at GAO. The proceedings at GAO continue despite the Agency's override of

the stay. Further, by asserting that KENROB's performance on the contract will cause it to suffer competitive disadvantage, Plaintiff assumes that the contract will be recompeted. This is purely speculative. The law is clear on this point: a plaintiff must establish that it will "'inevitably' suffer harm" in order to make a showing of irreparable harm. *PGBA*, 60 Fed. Cl. at 220. There is nothing to indicate that the GAO will recommend the contract be recompeted. Further, if the GAO were to recommend that the Agency undertake a lesser degree of corrective action than recompeting the contract, such as a re-evaluation of the proposals, Plaintiff would face no competitive disadvantage.

ASD also argues that its proposal in any recompetition [redacted] Pl.'s Mot. at 32. Again, ASD's assertion is speculative because it assumes that there will be a recompetition of the WITS contract. Second, ASD assumes that any recompetition will not set forth [redacted] Industry Day Briefing,

A.R. at 159 (giving notice of documents describing the [redacted] on FBO). This argument by Plaintiff amounts to no more than a strawman that is easily knocked over. There is no reason to believe the agency would not set forth an [redacted] at which point ASD would suffer no competitive disadvantage.

ASD further maintains that its right to have contract performance stayed absent a rationally based finding that exceptional circumstances exist warranting an override "will be lost forever if an injunction does not issue." Pl.'s Mot. at 30. Here, Plaintiff makes no assertion of imminent harm that it will suffer if injunctive relief is not granted. Rather, Plaintiff merely restates the law of CICA overrides. The fact that Plaintiff will lose its right to a CICA stay if injunctive relief is not granted is not an expression of irreparable harm.

Plaintiff's final assertion of harm is a repetition of its prior competitive disadvantage complaint. Pl.'s Mot. at 32. Plaintiff again argues that it will suffer competitive disadvantage if KENROB hires incumbent personnel to perform services on the new WITS contract.

---

2 [redacted]



::ODMA\PCDOCS\MC1DOCS1\209082\2

FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

ASD again presumes that the WITS contract will be recompeted. In this case, as in *Sierra Military Health Services, Inc. v. United States*, 58 Fed. Cl. 573, 582 (2003), "'it is settled law that no assurance exists that a contractor will receive an award . . . .'" *Spherix*, 62 Fed. Cl. at 507 (citing *Sierra Military Health Services, Inc.*, 58 Fed. Cl. at 582 (citing *OAO Corp. v. United States*, 17 Cl. Ct. 91, 105 (1989)). Besides being speculative, this assertion of harm by ASD is a claim of economic harm, which is not cognizable as irreparable harm. "[E]conomic loss without more does not rise to the level of irreparable injury." *Spherix*, 62 Fed. Cl. at 506 (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed.Cir.1983)).

A similar competitive disadvantage argument was rejected in *Cerberonics, Inc. v. Garrett*, No. 91-0239, 1991 WL 45738 (D.D.C. Mar. 20, 1991). In that case, plaintiff's argument that it would lose employees to the awardee on a contract was rejected by the court because the employees had already left the plaintiff and joined the awardee. Therefore, the Court held, the plaintiff did not have employees to lose:

> Plaintiff argued that if [awardee] were allowed to continue performance on the contract it would lose its capacity to perform the MEASURE contract since its experienced personnel would follow the contract and begin working for [awardee]. At the time this application for preliminary injunction was filed, however, many of plaintiff's MEASURE employees were already working for [awardee]. Thus, a preliminary injunction would not enable plaintiff to maintain these employees, which it has already lost.

*Id.*, 1991 WL 45738, at *4. Similar to the plaintiff in *Cerberonics*, ASD cannot succeed on an argument that it will lose employees that it has already lost. As explained by Mr. Mark J. Schuler, CEO of KENROB, [redacted] Schuler Declaration ("Decl.") ¶ 5, Exhibit ("Ex.") 1. To the extent ASD is arguing that it will lose employees that it has already lost, there can be no finding of harm.

In conclusion, because Plaintiff is factually and legally incorrect that it lacks an adequate remedy in the absence of an injunction, it does not succeed in demonstrating that it will suffer irreparable harm if its motion is denied.

### III. ASD Has Failed To Bear Its Burden Of Establishing That Its Hardship Outweighs The Hardships Of Both The Government And KENROB.

Plaintiff has the burden of showing that the hardships it claims outweigh those of both the Government and Intervenor. *See Cubic Defense Sys., Inc. v. United States*, 45 Fed. Cl. 450, 456 (1999). The Court has previously defined plaintiff's burden as follows: "In considering whether the balance of the hardships tips in the favor of a plaintiff in a post-award bid protest, a court must balance the potential harm to the plaintiff of not granting the injunction against the potential harm to **both** the Government and the awardee should the injunction be granted." *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 654 (2003) (citing *ES-KO v. United States*, 44 Fed. Cl. 429, 435 (1999)) (emphasis added). Plaintiff has failed to bear its burden because it neglects to take into account the harm that KENROB will suffer if the motion for a preliminary injunction is granted.

In *Cubic Def.*, 45 Fed. Cl. at 474, this Court, in denying the plaintiff's request for injunctive relief, emphasized the plaintiff's failure to explore whether its harm outweighed any harm to the Government or the awardee in denying a request for injunctive relief. "It is not just its own 'irreparable harm' that Cubic has neglected to demonstrate. It

has also failed to demonstrate that the harm it would suffer without injunctive relief outweighs any harm to the government or [awardee]." *Id.* Plaintiff similarly fails in this case to engage in any exploration of Intervenor's harm if its motion is granted, choosing instead to rationalize that, "Moreover, the stay will not adversely impact KENROB's transition. KENROB has the same ability to transition after the stay period if ASD's protest is unsuccessful, as it will if it transitions immediately." Pl.'s Mot. at 33.

This, however, does not address the fundamental question that must be asked in every balancing-of-the-hardships analysis: whether the protestor can show more hardship than the Government and the intervenor combined. Here, as evidenced by the D&F, by the Administrative Record, and by common sense, the harm to the Agency would be substantial. Far from being hindered with mere "delay," as ASD seems to suggest, the Agency would be forced to bear a decentralized, inefficient yet critical support structure at a time when budgets are being cut and the need for efficient and effective operations within the Department of Defense is paramount.

KENROB, of course, would also be severely harmed. Contrary to Plaintiff's assertions, a stay on contract performance will impose on KENROB at least the same degree of harm if the injunction is granted as Plaintiff purports it will suffer if the injunction is denied, if not more.

As a preliminary matter, Mr. Schuler, KENROB's CEO, explains that KENROB is a small business with more than twenty years of service in the government contracting sector. Schuler Decl. ¶¶ 3, 6, Ex. 1. KENROB will lose a vital business opportunity if the Agency's override decision is reversed. *Id.* ¶ 4. Since the award of the WITS contract, [redacted] *Id.* KENROB [redacted] *Id.*

[redacted]

*Id.* In a very competitive job market, [redacted]

[redacted] *Id.* Imposing a stay on KENROB's WITS contract will [redacted]

*Id.* This represents a loss of a vital business opportunity that is as devastating, or more so, than any loss ASD may suffer if its injunction is denied.

The Court of Federal Claims has recognized that this degree of harm that KENROB would suffer is more than mere economic loss, and instead rises to the level of irreparable harm. In *Chapman*, the Court noted that "there are occasions, particularly in the arena of government contracting, in which an economic loss will not be compensable with money damages; in these situations, economic loss can rise to the level of irreparable injury. Accordingly, this Court has found that lost profits, or even the loss of an opportunity to earn profits, is 'sufficient to constitute irreparable harm.'" *Chapman*, 67 Fed. Cl. at 193 (quoting *Hosp. Klean of Texas, Inc. v. United States*,

65 Fed. Cl. 618, 624 (2005)). KENROB stands to suffer harm in the same way. In other words, if ASD's protest is denied by the GAO, KENROB [redacted]

The loss occasioned by [redacted] will affect not only KENROB, but the WHS community as well. From conversations that KENROB held [redacted] Schuler Decl. ¶ 5, Ex. 1. If WITS contract performance is stayed, KENROB estimates [redacted] *Id.* From experience and conversations [redacted] *Id.*



::ODMA\PCDOCS\MC1DOCS1\209082\2

FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

As a result of the stay, therefore, KENROB will lose a vital business opportunity [redacted] *Id.* Further, this [redacted] will cost WHS' customers at the Department of Defense [redacted] that is imperative to ensuring support of, among others, the Office of the Secretary of Defense, the Defense Finance and Accounting Service, and critical building operations at the Pentagon. *Id.*

The competitive disadvantage that KENROB will be subjected to if Plaintiff's motion is granted is the same as or more detrimental than that Plaintiff will experience if its motion is denied. Schuler Decl. ¶ 6. If performance is stayed, KENROB will [redacted] and will therefore be put at a competitive disadvantage [redacted] *Id.* KENROB's success over the past 25 years is due to its operating principle to "invest in our people." *Id.* KENROB is a small, family-owned business that bases its success on protecting the welfare of its employees. *Id.* Staying performance on the WITS

contract will force KENROB [redacted] *Id.* [redacted] *Id.*

KENROB, therefore, will be robbed of its ability to [redacted] *Id.* As a result of having to [redacted] KENROB will suffer a competitive disadvantage on any potential recompetition of this contract. Further, KENROB will suffer a competitive disadvantage on [redacted] *Id.* This degree of competitive disadvantage is equal to, if not more severe, than any competitive disadvantage Plaintiff will experience if its motion is denied.

KENROB will also suffer a competitive disadvantage because it will [redacted] Schuler Decl. ¶ 7. [redacted] *Id.* [redacted] *Id.* This, therefore, is another example of how KENROB will be put at a significant competitive disadvantage if performance on the WITS contract is stayed.

Further, KENROB will be [redacted] Schuler Decl. ¶ 8. As noted above, KENROB will be forced to [redacted] *Id.* KENROB will be [redacted] *Id.* As a small business, [redacted] Vacating WHS' decision

to override the stay, therefore, will further subject KENROB to irreparable harm.

In conclusion, it is evident that Plaintiff failed to consider the harm that KENROB will suffer if Plaintiff's motion is granted. Contrary to Plaintiff's assumptions, KENROB will not have the same ability to transition onto the WITS contract after the stay period as it will if it transitions immediately. A stay will subject KENROB to irreparable harm by placing it at a competitive disadvantage and costing it the valuable business opportunity of performing on the WITS contract. The harm that KENROB will suffer if Plaintiff's motion is granted is at least equal to the harm that ASD will suffer if its motion is denied. Adding the Government's harm to KENROB's demonstrates that the balance of harms tips away from Plaintiff in this case.

In conclusion, ASD has not shown – and cannot show that it can overcome its burden in proving that its hardship in losing the Agency's Information Support Services contract outweighs **both** the Government's and KENROB's hardships in being subject to a permanent injunction.

## IV. ASD Has Failed To Bear Its Burden Of Establishing That It Is In The Public Interest To Grant Injunctive Relief.

Plaintiff has the burden of showing that it is in the public interest to grant injunctive relief. *See Cubic Def.*, 45 Fed. Cl. at 474. The Court will take into consideration the public's interest in "ensuring that the government procurement process is fair." *PGBA*, 57 Fed. Cl. at 663. However, as the *PGBA* court observed, "The public also has an important interest in the effective and efficient operation" of the performance of the contract at issue. *Id.*

It is not in the public interest to grant injunctive relief in favor of Plaintiff in this case. There is no support for the argument that allowing KENROB to perform the WITS contract while Plaintiff litigates its bid protest before the GAO somehow affects the integrity of the procurement process. Further, though the CICA stay was intended to ensure competition in contracting, *CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100, 112 (2006), it is evident that Congress maintained an interest in the uninterrupted performance of contracts post-award. As the Court of Federal Claims noted in *Spherix*, the language of the CICA statute "demonstrates Congress'

disinclination to interrupt the performance of contracts." *Spherix*, 62 Fed. Cl. at 507.

> During argument defendant's counsel made the point that a pre-award override by an agency head, 31 U.S.C. § 3553(c)(2)(A), is held to a higher standard than an override that is instituted after contract performance has begun, 31 U.S.C. § 3553(d)(3)(C). Specifically, the "best interests" exception in section 3553(d)(3)(C) is not an acceptable reason for authorizing a stay under section 3553(c)(2)(A). This statutory language demonstrates Congress' disinclination to interrupt the performance of contracts; by providing agency heads with a lower standard for overriding a stay, Congress recognized the need for continuing performance of awarded contracts.

*Id.* It is true that "'the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid.'" *Sierra Military Health Servs., Inc.*, 58 Fed. Cl. at 582 (quoting *Seattle Sec. Servs. v. United States*, 45 Fed. Cl. 560, 572 (2000)). But "to this end the GAO protests must proceed to resolution without hindrance to consideration of the resulting determination. " *Id.* In this case, Plaintiff has timely brought its protest before the GAO, which is scheduled to render its decision by September 22, 2006. It is clear that *a fait accompli* will not occur from the continued performance of transition work on the WITS contract, and KENROB's performance on

the contract will be no impediment to consideration of the GAO protest decision. *See Sierra Military Health Servs., Inc.*, 58 Fed. Cl. at 584.

In conclusion, ASD has failed to overcome the harm to the public interest in granting the injunction.

## CONCLUSION

For the foregoing reasons, ASD has failed to meet its burden of establishing that it will likely succeed on the merits of its claim, that it will suffer irreparable harm if its motion is denied, that its harm is greater than that of KENROB's and the Government, and that granting this motion is in the public interest. Accordingly, ASD's Motion for Preliminary Injunction should be denied.

Dated: July 6, 2006

VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1658
Telecopier No.: (703) 821-8949
Protected Telecopier No.: (703) 760-1644

*Counsel to Intervenor KENROB IT Solutions, Inc.*

Of Counsel:

William L. Walsh, Jr.
Keir X. Bancroft
Peter A. Riesen
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 821-8949
Protected Telecopier No.: (703) 760-1644

# DECLARATION OF MARK J. SCHULER

I, Mark J. Schuler, hereby state and declare pursuant to the provisions of 28 U.S.C. § 1746(2) as follows:

1. This affidavit is based on my personal knowledge as it relates to the operations of KENROB Information Technology Solutions, Inc. ("KENROB IT Solutions" or "KENROB").

2. I am the Chief Executive Officer of KENROB. In this position, I provide operational, programmatic, financial, contractual, and management oversight for the company. I have intimate knowledge of KENROB's trade secrets, competitive advantages, contract bidding strategies, contract pricing strategies, and other financial and confidential business information.

3. KENROB IT Solutions is a small business that successfully proposed to improve the effectiveness of the Washington Headquarters Services ("WHS" or "Agency") Information Technology Support ("WITS") contract by offering to implement novel solutions [redacted] Vacating WHS' decision to override the stay on contract performance will cause KENROB irreparable harm

because it will cost KENROB a vital business opportunity, place it at a competitive disadvantage [redacted]

4. KENROB will lose a vital business opportunity if the Agency's override decision is reversed. Before award of the WITS contract, KENROB was a small business [redacted] By the start of performance on the WITS contract, KENROB [redacted] As of July 5, 2006, [redacted] were supporting the WITS contract. Further, KENROB is [redacted] if a stay is placed on KENROB's WITS contract. If contract performance is stayed, KENROB will have to [redacted] In a very competitive job market, [redacted]



FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

[redacted] Simply stated, a stay of KENROB's WITS contract will [redacted]

5. After winning the WITS contract award, KENROB immediately held two incumbent job fairs at which it interviewed [redacted] positions on Team KENROB. Based upon those interviews, KENROB estimates that between [redacted] contract was executed. Approximately [redacted] Team KENROB. If WITS contract performance is stayed, we estimate that [redacted] From our experience and our conversations [redacted] As a result of the stay, therefore,

KENROB will lose a vital business opportunity [redacted] Further, [redacted] will cost WHS' customers at the Department of Defense [redacted] that is imperative to ensuring support of, among others, the Office of the Secretary of Defense, the Defense Finance and Accounting Service, and critical building operations at the Pentagon.

6. KENROB will be placed at a distinct competitive disadvantage if performance on the WITS contract is stayed because it will lose the [redacted] Much of KENROB's success over the past two and a half decades is due to our operating principle to "invest in our people." We are a small, family-owned business that bases its success on protecting the welfare of our employees. As noted above, staying performance of the WITS contract will force us [redacted] This [redacted] after the stay is lifted, [redacted]

[redacted] for that matter. KENROB, therefore, after having won the WITS contract [redacted] by a stay of contract performance. KENROB will thus suffer a competitive disadvantage [redacted] Further, KENROB will suffer a competitive disadvantage [redacted]

7. Vacating WHS' override decision will also subject KENROB to a competitive disadvantage because [redacted] KENROB's proposed technical solution for the WITS [redacted]

[redacted] if performance on the WITS contract is not stayed.

8. If performance on the WITS contract is stayed, KENROB will [redacted] As noted above, KENROB will be forced to [redacted] if WITS contract performance is stayed. KENROB will be [redacted] As a small business, KENROB [redacted] following a stay of contract performance. Vacating WHS' decision to override the stay, therefore, will subject KENROB to irreparable harm.



FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

I hereby declare under the penalty of perjury that the foregoing is true and correct.

Executed on: July 6, 2006

Mark J. Schuler, Chief Executive Officer



FINAL REDACTED VERSION
FOR PUBLIC DISTRIBUTION

**CERTIFICATE OF FILING**

I hereby certify that on July 17, 2006, a copy of the foregoing Final Redacted Version of Intervenor's Response In Opposition To Plaintiff's Motion for a Preliminary Injunction was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Keir X. Bancroft
Keir X. Bancroft